IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN McKEITHER,　　　　　　　)
　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　Civil Action No. 12-0176
　　　　v.　　　　　　　　　　　)　Magistrate Judge Cynthia Reed Eddy
　　　　　　　　　　　　　　　　)
LOUIS FOLINO; *ET AL.*,　　　　　)
　　　　　Defendants.　　　　　　)

## MEMORANDUM OPINION AND ORDER[1]

　　　Plaintiff, Kevin McKeither, is a prisoner in the custody of the Pennsylvania Department of Corrections (DOC).  He currently is incarcerated at the State Correctional Institution at Retreat.  Plaintiff filed his civil rights complaint in this Court on February 13, 2012 claiming that DOC improperly transferred him to an out of state prison.  On March 26, 2012, he filed an Amended Complaint (ECF No. 9).  On August 8, 2012, Defendants filed a Motion to Dismiss (ECF No. 23) and a Brief in Support (ECF No. 24).  On August 9, 2012, this Court issued a three-page Order for Plaintiff to respond to the pending motion to dismiss (ECF No. 25).  That Order gave Plaintiff the opportunity to file an amended complaint with respect to the deficiencies set forth in the pending motion to dismiss.  On November 28, 2012, Plaintiff filed a second Amended Complaint (ECF No. 34) wherein he named additional defendants.

　　　On December 12, 2012, the Commonwealth Defendants filed a Motion to Dismiss Second Amended Complaint (ECF No. 37) and a Brief in Support (ECF No. 38).  On January 14, 2013, Plaintiff filed his Response to the pending motion (ECF No. 39).  On February 22,

---

[1].  The parties consented to jurisdiction by a United States Magistrate Judge.  *See* ECF Nos. 6 and 15.  *See also* 28 U.S.C. § 636(c)(1).

2013, the Court ordered the United States Marshal to serve the newly identified defendants in Plaintiff's Amended Complaint.

For the reasons set forth below, the Commonwealth Defendants' Motion will be granted. Because Plaintiff previously was informed that his original complaint was deficient, and he has filed two amended complaints, this Court is not required to provide him further leave to amend. *See* Shelley v. Patrick, 481 F. App'x 34, 36 (3d Cir. 2012). Moreover, amendment would be futile.

As to the remaining Defendants, the Court will dismiss the claims against them as frivolous and as failing to state a claim upon which relief can be granted for the same reasons, pursuant to this Court's authority and obligation to prescreen prisoners' complaints.

## A. Standards of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly,  550 U.S. at

555.  *See also* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting <u>Twombly</u>, and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents.  *Id*. (citations omitted).  In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004); <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).   In a section 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."  <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir. 2002) (quoting <u>Holley v. Dep't of Veteran Affairs</u>, 165 F.3d 244, 247–48 (3d Cir. 1999)).  *See also* <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting <u>Higgins</u>, 293 F.3d at

3

688).   Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to

allege sufficient facts to support a cognizable legal claim.   *See, e.g.*, <u>Taylor v. Books A Million,</u>

<u>Inc.</u>, 296 F.3d 376, 378, (5th Cir. 2002); <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 2102 (10th Cir.

1996).

       In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat.

1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in

an effort to curb the increasing number of frivolous and harassing law suits brought by persons in

custody.   Pertinent to the case at bar is the authority granted to federal courts for *sua sponte*

screening and dismissal of prisoner claims.   Specifically, Congress enacted the provision at 28

U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by

prisoners seeking redress from a governmental entity or an officer or employee of a governmental

entity.   28 U.S.C. § 1915A(a).   If the complaint is "frivolous, malicious, or fails to state a claim

upon which relief can be granted," or "seeks monetary relief from a defendant who is immune

from such relief," the court must dismiss the complaint.   28 U.S.C. § 1915A(b).

       In addition, Congress significantly amended Title 28 of the United States Code, section

1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP),

*i.e.*, without prepayment of costs.   Section 1915(e) (as amended) requires the federal courts to

review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).

       Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons

Act, 42 U.S.C.A. § 1997e.   In this regard, the PLRA amended section 1997(c) to require the

court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."   *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 4). In addition, many of the Defendants are employees of a government entity.   Finally, Plaintiff's claims concern prison conditions.   Thus, Plaintiff's allegations must be reviewed in accordance with the directives of the PLRA.

## B. Plaintiff's Allegations

Petitioner was one of the Pennsylvania state prisoners who was temporarily transferred to a prison in Muskegon County, Michigan, for service of his Pennsylvania sentence from February 17, 2010, through May 25, 2011.   The transfer was effectuated pursuant to the Interstate Corrections Compact, 61 Pa. Cons. Stat. § 7101, *et seq.*, which was enacted to allow the transfer of inmates from a Pennsylvania state correctional facility to a correctional facility in another state, on a temporary basis, to help alleviate overcrowding in Pennsylvania's correctional facilities.   *See, e.g.*, Maines v. Rendell, Civil No. 11-70, 2011 WL 6153093, *1 (W.D. Pa. Dec. 9, 2011).

Plaintiff alleges that on or about February 18, 2010, he was advised that he was selected for transfer to the State of Michigan by Defendants Cowan and Congelio.   He claims that he told Defendants Susan Cowan and Gabriella Congelio that he "was chronically ill and did not meet the criteria for the transfer to the facility." Second Amended Complaint, (ECF No. 34, at 2). In

response, Defendant Cowan advised that he "did not have a choice in the matter," *id*. at 3, and on February 19, 2010, he was transferred to Muskegon Correctional Facility (MCF) in the State of Michigan.

While at MCF, Plaintiff had to work because Michigan did not give the Pennsylvania inmates idle pay.  While working for the maintenance crew, he suffered an injury to his right shoulder.  For pain management, the Medical Department at MCF prescribed Ibuprofen 400mg and then Naproxen 500mg.  When these medications did not alleviate the pain to Plaintiff's satisfaction, he was treated with four steroid injections within a 7 month time period.  At that time, he experienced blurry vision, dry mouth, unusual thirst and increased urination.  He visited the Medical Department who tested his blood sugar and found it elevated.

Plaintiff asserts that the steroid injections should not have been given to a person suffering from hyperglycemia as it has caused him to contract diabetes for which he has been given insulin and Metformin.  He further claims that the steroids caused him to have a nose infection and be placed on an antibiotic for seven days.  He currently is required to take 1000 mg Metformin per day and will "have to take Metformin more than likely for the rest of [his] life." *Id*., (ECF No. 34, at 5).

Accordingly, McKeither seeks to hold Defendants liable for an Eighth Amendment violation because he claims that, essentially, but for his transfer to Michigan, he would not have been treated with steroids for his shoulder pain and, consequently, he would not have become hyperglycemic because of the steroid injections.  Thus, he would not be required to continue to take medication for this condition but for his transfer.

C. Liability under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. City of Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, section 1983 liability may attach. Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988). However, at a minimum such liability may be imposed

"only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting <u>Chinchello</u>, 805 F.2d at 133). *See also* <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 (3d Cir. 1997).

There is no question that Defendants, even privately contracted doctors and medical staff, were acting under color of state law with respect to the actions alleged in the Complaint. While it is questionable whether many of the Defendants acted with the requisite personal involvement, it is clear that Plaintiff has failed to allege any violation of any right under federal law. Consequently, the Motion to Dismiss will be granted on that basis, and the Complaint dismissed under the PLRA as it would be futile to allow any further amendment.

      1.     Fourteenth Amendment Due Process Claim

Plaintiff asserts that his Fourteenth Amendment procedural due process rights were violated when he was transferred from SCI-Greene to Muskegon. The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976). It shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify either as liberty or property interests. <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). These types of protected interests are not unlimited: the interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7 (1979) (citation

omitted).

Thus, the threshold question presented by Plaintiff's claim is whether Defendants' actions impacted a constitutionally-protected liberty interest.   A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.   <u>Hewitt</u>, 459 U.S. at 466.   A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process.   <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 781 (1973).   Interests recognized by the Supreme Court that fall within this category include the revocation of parole, <u>Morrissey</u>, 408 U.S. at 471, and the revocation of probation, <u>Gagnon</u>, 411 U.S. at 778.[2]

It is well-settled that an inmate has no inherent federal liberty interest guaranteeing that he remain in a particular prison, or preventing his transfer to another correctional facility, either within the same state or interstate.   <u>Olim v. Wakinekona</u>, 461 U.S. 238, 247 (1983); <u>Beshaw v. Fenton</u>, 635 F.2d 239 (3d Cir. 1980).   In particular, the Supreme Court in <u>Okim</u> recognized:

> . . . Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State.   Often, confinement in the inmate's home State will not be possible.
>
> A person convicted of a federal crime in a State without a federal correctional facility usually will serve his sentence in another State. Overcrowding and the need to separate particular prisoners may necessitate interstate transfers. For any number of reasons, a State may lack prison facilities capable of providing appropriate correctional programs for all offenders.
>
> Statutes and interstate agreements recognize that, from time to time, it is

---

[2]   If a liberty interest is found, the next step in the due process inquiry is to determine what process is due.   Due process is a flexible concept and calls for such procedural protections as the particular situation demands. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).   At a minimum, due process requires notice and the opportunity to be heard.

necessary to transfer inmates to prisons in other States. . . .

        In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State.   Confinement in another State, unlike confinement in a mental institution, is "within the normal limits or range of custody which the conviction has authorized the State to impose."

<u>Okim</u>, 461 U.S. at 245–248 (internal citations and footnotes omitted).

        Thus the Constitution does not grant Plaintiff any inherent right to be incarcerated solely in his resident state or the state in which he was convicted.   Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in his confinement solely in a Pennsylvania DOC facility.   In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees.   Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   <u>Sandin</u>, 515 U.S. at 483 (emphasis added).

        The federal courts agree that Pennsylvania prisoners do not have any state created interest in specific housing.   *See* <u>Jerry v. Williamson</u>, 211 F. App'x 110, 112 (3d Cir. 2006); <u>Bush v. Rendell</u>, Civil No. 1:10–2246, 2011 WL 7423475, 1 (M.D. Pa. Dec. 19, 2011) (dismissing due process claim challenging transfer to county prison); <u>Johnson v. Hill</u>, 910 F. Supp. 218, 220 (E.D. Pa. 1996) (holding that prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit).   In this

regard, the Pennsylvania code clearly states that an inmate does not have a right to be housed in a particular facility or in a particular area within a facility.  *See* 37 Pa. Code § 93.11(a).  Thus, Plaintiff has no state created liberty interest to be incarcerated in a particular institution.

Plaintiff asserts that he had a state-created liberty interest in avoiding an involuntary transfer out of state because he had a chronic medical problem, hypertension.  In support, he claims that DOC policy provided that only inmates free of serious medical issues would be eligible for transfer out of state.  Plaintiff misunderstands his due process rights.  First, Plaintiff's complaints of violation of state rules and/or procedures is not cognizable in a section 1983 suit.  Gramenos v. Jewel Co., Inc., 797 F.2d 432, 434 (7th Cir. 1986) ("In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same.").  Secondly, simply because the state mandates that certain procedures be complied with does not mean that those procedures are of constitutional significance.  Hence, the failure to comply with them does not deprive Plaintiff any constitutional due process.  The Court of Appeals for the Third Circuit has explained as follows.

> The fact that Pennsylvania regulations provide for hearings after transfer to administrative custody is not relevant to a determination of whether federal procedural due process is required.  *See* Hewitt v. Helms, 459 U.S. 460, 470 (1983) (The mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation does not indicate the existence of a protected liberty interest.).   The process afforded by state law is not relevant in determining whether there is a state created right that triggers due process protection.   Olim v. Wakinekona, 461 U.S. 238 (1983). ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice, the State does not create an independent substantive right.")

Griffin v. Vaughn, 112 F.3d 703, 709 n.3 (3d Cir. 1997).   Therefore, even assuming DOC policy

11

did not permit the transfer of seriously ill inmates, deviation from this policy does not, in and of itself, show a violation of due process.  *Accord* Perry v. Pennsylvania Dep't of Corr., 441 F. App'x 833, 838-839 (3d Cir. 2011) (plaintiff "appears to stake a constitutional claim on the defendants' actions that allegedly violated state law and policy.  '[B]y its terms, [42 U.S.C.] § 1983 provides a remedy for violations of federal, not state or local, law'") (quoting McMullen v. Maple Shade Twp., 643 F.3d 96 (3d Cir. 2011)).

Moreover, Plaintiff claims that he suffered from a common medical condition, hypertension.  Such a condition, when treated, does not automatically translate to a critical or serious medical condition that otherwise would preclude his transfer under DOC policy.  It is noted that there is no medical limitation to transferring inmates under the Interstate Corrections Compact, 61 Pa. Cons. Stat. § 7101, *et seq.*  It would be unrealistic for DOC to prohibit the transfer of inmates with any type of medical condition as it would exclude most, if not all, of the prison population.  As Plaintiff does not have any liberty interest in avoiding transfer to an out of state prison, his Due Process claim will be dismissed.

> 2.    Eighth Amendment Deliberate Indifference Claims

Plaintiff further claims that Defendants acted with deliberate indifference by transferring him out of state and in failing to adequately medically treat him during his stay there.  These claims invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and
> unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual

punishments."   This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.   In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."   Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns.   A prison official violates the Eighth Amendment only when two requirements are met.   The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk.   Farmer, 511 U.S. at 834.   The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.   In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.   The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.   We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.   This approach comports best with the text of the Amendment as our cases have interpreted it.   The Eighth Amendment does not outlaw cruel and

unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Prison conditions may amount to cruel and unusual punishment if they deprive inmates of the minimal civilized measure of life's necessities.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Notwithstanding, Plaintiff must allege a substantial injury-in-fact to make a claim for damages; his constitutional rights have no inherent monetary value.  Memphis Cmty. Sch. Dist. v.. Stachura, 477 U.S. 299 (1986).

In the case at bar, Plaintiff has failed to allege that the conditions of confinement in the MCF rise to an Eighth Amendment violation.  Specifically, Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the MCF deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.  Moreover, Plaintiff does not allege that his chronic illness went untreated after his transfer to Michigan.

As defendants point out, Plaintiff's claim against the DOC defendants is similar to that raised and rejected by the Court of Appeals for the Second Circuit in Green v. McLaughlin, 480 F. App'x 44 (2d Cir. 2012).

Second, with respect to his medical deliberate indifference claim, Green alleged in his complaint that GHCF medical staff knew of his diabetes and nonetheless transferred him to Southport Correctional Facility, where he suffered three hypoglycemic incidents.  The Eighth Amendment medical deliberate indifference analysis is composed of both objective and subjective components. Under the subjective prong, mere negligence is not actionable, nor is mere medical malpractice tantamount to deliberate indifference.  Instead, deliberate indifference is equivalent to subjective recklessness, as the term is used in

14

criminal law and requires that the charged official act or fail to act while actually
aware of a substantial risk that serious inmate harm will result.

        Assuming that diabetes is sufficiently serious to satisfy the objective
component of the medical deliberate indifference test, Green has not satisfied the
subjective prong by alleging that any of the GHCF medical staff was aware of a
substantial risk that, if he were transferred to Southport, serious harm would
result.  Specifically, Green has never explained why Southport was ill-equipped
to treat his diabetes and, more importantly, he has not alleged that any individual
at Green Haven knew that there was a substantial risk that Southport would
provide inadequate treatment for Green's diabetes, and then consciously
disregarded that risk by approving the transfer.  Accordingly, there is no
indication that Green could state a plausible medical deliberate indifference claim,
even if he had named the correct defendant.

Green v. McLaughlin, 480 F. App'x 44, 48 (2d Cir. 2012) (internal quotations and citations

omitted).   Consequently, the DOC Defendants are entitled to dismissal of this claim.

        Plaintiff also asserts an Eighth Amendment claim against various medical personnel at

the MCF alleging failure to provide adequate medical treatment.   To state an Eighth Amendment

violation in the context of medical treatment, an inmate must show prove two elements: 1)

plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately

indifferent to the serious medical need.   Estelle v. Gamble, 427 U.S. 97, 107 (1976).   The first

showing requires the court to determine whether the medical need was objectively "sufficiently

serious."   A medical need is "serious" if it is one that has been diagnosed by a physician as

mandating treatment, or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.   Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st

Cir. 1990); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second prong requires a court subjectively to determine whether the officials acted with a

sufficiently culpable state of mind.   Deliberate indifference may be manifested by an intentional

refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.   Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, Plaintiff's allegations show that he received a substantial amount of medical treatment by numerous medical professionals during his confinement at the MCF.   While he did not receive an order for an MRI for his shoulder, such omission does not show that any Defendant was deliberately indifferent to his medical needs.   The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.   Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997).   The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference.   Farmer, 511 U.S. at 837.   An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified."   *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation.   Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer, 991 F.2d at 67.

The Supreme Court explained the difference between negligence and treatment of a constitutional dimension in Gamble, 429 U.S. at 104.   In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck.   He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell.   He

returned to the hospital where he was given pain pills by an inmate nurse and then was examined

by a doctor.  The following day, his injury was diagnosed as a lower back strain; he was

prescribed a pain reliever and a muscle relaxant.   Over the course of several weeks, Gamble was

seen by several doctors who prescribed various pain relievers and provided him with medical

work excuses.   Ultimately, despite his protests that his back hurt as much as it had the first day,

medical staff certified Gamble to be capable of light work.   During the next two months,

Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood

pressure medication.   Subsequently, a medical assistant examined Gamble and ordered him

hospitalized for treatment of irregular cardiac rhythm.

> The Supreme Court held that Gamble's allegations failed to state a claim upon which

relief could be granted against the defendant, both in his capacity as a treating physician and as

the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a
> 3-month period . . . .   They treated his back injury, high blood pressure, and heart
> problems. Gamble has disclaimed any objection to the treatment provided for his
> high blood pressure and his heart problem; his complaint is "based solely on the
> lack of diagnosis and inadequate treatment of his back injury."   The doctors
> diagnosed his injury as a lower back strain and treated it with bed rest, muscle
> relaxants and pain relievers.   Respondent contends that more should have been
> done by way of diagnosis and treatment, and suggests a number of options that
> were not pursued.   The Court of Appeals agreed, stating:   "Certainly an x-ray of
> (Gamble's) lower back might have been in order and other tests conducted that
> would have led to appropriate diagnosis and treatment for the daily pain and
> suffering he was experiencing."   But the question whether an X-ray or additional
> diagnostic techniques or forms of treatment is indicated is a classic example of a
> matter for medical judgment. A medical decision not to order an X-ray, or like
> measures, does not represent cruel and unusual punishment. At most it is medical
> malpractice, and as such the proper forum is the state court under the Texas Tort
> Claims Act.

Gamble, 429 U.S. at 107 (internal citations omitted) (emphasis added).

Plaintiff's allegations reveal that Defendants acted responsibly in attending to Plaintiff's medical needs.   They gave him two types of pain medication and, when that did not satisfy Plaintiff, they provided him with four steroid injections.   Moreover, when his elevated blood sugar was diagnosed, he was given Metformin and insulin to treat his condition.   Finally, he was treated with antibiotics for his nose infection.   While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.   A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).   Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness.   Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992); White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

In the case at bar, Plaintiff has set forth no allegation that any Defendant acted with deliberate indifference to a serious medical need for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Thus, the Complaint will be dismissed on the basis that Plaintiff's amended allegations fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

Because Plaintiff has twice amended his complaint to address – but not resolve – its patent insufficiencies, the dismissal will be with prejudice as amendment would be futile.


s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:

Kevin McKeither
HV-5414
SCI Retreat
660 State Route 11
Hunlock Creek, PA 18621-3136